DARWIN POWERS & another *vs.* EPHRAIM OSGOOD.

On a complaint under the mill act, for flowing land, testimony of the respondent that for more than twenty years he has flowed the land all the year round, except during the haying season; that he usually made hay in July, and had sometimes been till the middle of August making hay; and that the owners of the land had sometimes been as late as the last of September in getting out their hay; will not warrant an instruction to the jury that there is no evidence of prescriptive right to flow during the months of July and August.

COMPLAINT by Powers and Timothy Lincoln under the Gen. Sts. *c.* 149, for flowing their meadow in Princeton. The respondent, in his answer, set up a prescriptive right to flow the meadow.

At the trial in the superior court, before *Morton*, J., it appeared that the meadow flowed was situated below the respondent's

mill, and that, when the mill was in operation, the channel of the stream which conveyed away the water being narrow and obstructed, the water spread over the meadow.

The respondent testified as follows: " I bought the mill in 1832 and sold it in April 1867. Until 1837, we used to fill the pond and run the mill during the winter, and draw off the pond in the summer. After that, and until the present time, the dam has been kept up the year around, and the pond has never been drawn off. After 1837, we used to run pretty much all the time when there was water. I have a farm to carry on, and used to stop a few days to get planting and haying done. When it was dull weather we used to run it, but I was not in the habit of running it in haying time. I never ran it in hay time. Have sometimes been till the middle of August getting hay. Have run in July when I did not make hay. Usually made hay in July. When I made hay, I stopped and took my hands and worked on the farm. It took three or four weeks to get the hay, and when it was dull it took longer. We calculated to run the year round when we had water, excepting haying. We sometimes stopped in harvesting. There has been no substantial change in the flowing of the water for thirty-six years. It has always flowed in the same channel, and flushed over the complainants' meadow."

On cross-examination, he said: " In 1837, I made an arrangement with the landowners above; and since that I have flowed the year around. I did not make any arrangement with Powers particularly. Welch (at that time one of the part owners of the meadow) came to me, as long as he could, in haying time, and wanted to know how long I was going to stop the mill, because he was going to get his hay out. I guess I was haying all the time they were. I generally did not get through till they did. I might have, some years. I think Welch came to me for about ten years. I think he did not come up for the last part of his life, for two or three years. After that, Powers came to me several times to have me stop. I did, and was willing to accommodate him. I think I did not always stop. I had a right to flow, but always wanted to accommodate him. I think

I did not every time. In 1858, Lincoln came up and ordered me to stop, and I told him I should not stop at any rate. It was some time in August. They were later than usual. I was always willing to accommodate them, and give them a fair chance to get their hay .out. I have always given them a fair chance to get their hay out. I might have gone round to the farmers once or twice. I told them I could not thresh their grain, as I wanted to let them get their hay out. I don't know but I might have told the men at the mill not to let the water down while they were getting out hay."

On reëxamination, he said : " They generally got their hay out in season till 1850. For a number of years past, they have been very late in getting out their hay. They have been as late as the last of September."

The respondent's counsel, on inquiry by the judge, having said that he did not expect to essentially alter the foregoing statement, the judge ruled that " there was no evidence which would warrant the jury in finding that the respondent had any right by prescription to flow the complainants' land during the months of July and August without compensation." · Thereupon the respondent submitted to the following verdict : " The jury find that the respondent did flow the land of the complainants from three years before the date hereof, to April 1, 1867, and not afterwards ; and that he had the right to flow the land during all seasons of the year, except during the months of July and August, and not during said months ; " and alleged exceptions.

*P. E. Aldrich & C. H. B. Snow,* for the respondent.

*G. F. Hoar & G. A. Torrey,* for the complainants.

WELLS, J. In this case, the right of the respondent, by pre-scription, to flow the land of the complainants, must be taken to have been established by the verdict. Upon the testimony of the respondent himself, it is also manifest that the right he had thus acquired did not extend through the whole. of the sum-mer season. The precise measure of the exception, or the lim-itation of his right, is the only point upon which any question is now open. As it must depend entirely upon the effect which

should be given to the facts, testified of by the respondent, and which must be taken here precisely as he states them, the question raised as to the burden of proof is not of any importance to the decision.

The respondent testified that he never ran his mill " in hay time." The general tenor of his testimony is to the effect that he stopped it in order to do his own haying; and that was the only recognized interval of disuse. But we think it might fairly be deduced from his testimony that he did in fact also suspend for the haying upon the meadow of the complainants. He represents this as done only upon request and for the sake of accommodation, and not as the concession of any right. But as his own right depends upon actual use, it would not seem that his reasons for the omission were of any consequence, unless the repeated requests were of such a character as to amount to the recognition of his right by the owner below.

But whether " hay time " is to be limited to the respondent's own haying, or to include also any further time necessary or reasonable to enable the complainants to get off their hay, it is clear that the result of the respondent's testimony, and the natural and reasonable inference to be drawn from it, is, that the period of suspension of the use of the mill was governed by the haying season, and measured by that, and not by any particular interval reckoned upon the calendar, nor by any specific length of time. It is well settled that a right, or an exception from or modification of a right, may be thus defined by the purpose of its enjoyment, or of the omission to exercise it. *Cowell* v. *Thayer,* 5 Met. 253. *Bolivar Manufacturing Co.* v. *Neponset Manufacturing Co.* 16 Pick. 241. The irregularity in the commencement and termination of that season does not make it too indefinite as a measure; nor will the limitation of the right acquired by the millowner be equal to the extreme limits of time over which the haying season may have extended in any of the different years during the acquisition of the right. *Ray* v. *Fletcher,* 12 Cush. 200.

If the modification of the right to flow is for the haying season, or the period required for the getting off of the hay from

the meadow below, then the extent of that modification is to be measured by the time reasonably required each year for that purpose. In this aspect of the case, the ruling of the court below, that it covered the whole of the months of July and August, was erroneous.

But, upon the other aspect of the case, to wit, that the respondent's rights were to be determined by the periods of actual use during the twenty years previous, and that the burden was upon him not only to establish his right generally, but to show that it extended over the period in controversy, we are of opinion that there was some evidence upon which a jury might properly find that his right to flow did extend into the month of July, or cover some part of the two months during which the court below ruled, as matter of law, that he had shown no right by prescription. In fixing the definite period of the entire months of July and August, for the time during which the testimony of the respondent conclusively precluded him from having acquired any right by prescription, the court assumed to pass upon that which should have been submitted to the jury.

*Exceptions sustained.*